**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Criminal Action No. 16-cr-00057-MSK

**UNITED STATES OF AMERICA,**

       Plaintiff,

v.

**RICHARD WYATT**

       Defendant.

---

**OPINION ADDRESSING GOVERNMENT'S *JAMES* PROFFER**

---

**THIS MATTER** comes before the Court for a provisional ruling regarding the admissibility of statements contained in the Government's *James*[1] proffer **(# 74)** pursuant to Fed. R. Evid. 801(d)(2).

The Indictment (**# 1**) charges Mr. Wyatt with thirteen counts related to operation of his business, Gunsmoke, Inc., including conspiracy to deal in firearms without a license (Counts One and Five). The Government intends to offer statements made by unindicted co-conspirators at trial pursuant to Fed. R. Evid. 801(d)(2)(e). In accordance with the Court's protocol, the parties have filed a *James* proffer and the Defendant's objections (**# 74**) in chart form.

**I.**    **Legal Standards**

Out-of-court statements offered into evidence for the truth of the matter asserted are hearsay. Fed R. Evid. 802 provides that hearsay is not admissible evidence unless specified by statute or rule. Rule 802(d)(2)(e) provides an exception to the hearsay rule in criminal cases. A

---

[1]     *United States v. James*, 590 F.2d 575 (5th Cir. 1979).

statement that is otherwise hearsay is admissible if the statement was made by a co-conspirator of the Defendant in the scope and in furtherance of their conspiracy.

Rule 801(d)(2)(e) applies if the Government shows, by a preponderance of the evidence, that: (i) a conspiracy existed; (ii) the declarant and defendant were both members of the conspiracy; and (iii) the proffered statements were made in the course of and in furtherance of the conspiracy. *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Perez*, 989 F.2d 1574, 1577 (10th Cir. 1993). As for the first element, a conspiracy exists when: (i) the defendant agrees with another person to violate the law; (ii) the defendant knows of the essential objective of the conspiracy; (iii) the defendant knowingly and voluntarily participates in actions that further the conspiracy's objective; and (iv) there is interdependence among the conspirators. *U.S. v. Edwards*, 69 F.3d 419, 430 (10th Cir. 1995). To prove the defendant's participation in and knowledge of the conspiracy, the Government does not have to show the defendant knew all the details or all the members of a conspiracy, only that the defendant shared a common purpose or design with the purported co-conspirators. *United States v. Yehling,* 456 F.3d 1236, 1240 (10th Cir. 2006).

The Court makes a provision determination of admissibility based solely on the evidence proffered by the Government. That determination is necessarily conditional and potentially subject to reconsideration or modification at the time of trial, depending on the evidence actually produced by the Government as to the existence, composition, and scope of the conspiracy. *Id.* at 1491.

# ANALYSIS

### A. Scope of the conspiracy and its participants

The Government makes the following proffer, which the Court accepts as true for the limited purpose of this *James* ruling.

Mr. Wyatt owned and operated Gunsmoke, a retail gun shop. From at least April 1, 2013 through March 31, 2015, neither Mr. Wyatt nor Gunsmoke had a Federal Firearms License ("FFL"), as is required by the U.S. Bureau of Alcohol, Tobacco, and Firearms ("ATF") for parties engaged in the sale of guns. Despite not having an FFL, Mr. Wyatt devised a scheme to allow him to make sales of firearms through the assistance of another gun store called Gunner's Den, an entity operated by individuals identified as R.R. and T.M. Customers shopped at Gunsmoke, selected the weapon they wished to purchase, and paid Mr. Wyatt. Mr. Wyatt then contacted the dealer of the desired firearm and placed an order to be shipped to Gunner's Den. The customer completed required ATF forms and underwent a background check at the Gunner's Den. If the customer passed the background check, R.R. or T.M. gave them the weapon.

For provisional determination purposes, the Government's proffer is sufficient to show the existence of a conspiracy among Mr. Wyatt, R.R., and T.M., from April 1, 2013 to March 31, 2015. The purpose of that conspiracy was to allow Mr. Wyatt to illegally sell firearms despite not having an FFL, and Mr. Wyatt knowingly participated in that conspiracy.

### B. Particular statements

The Government's proffer identifies nine specific statements that the Government intends to admit via Rule 801(d)(2)(e). The Court addresses each statement, as described by the Government's proffer chart, in turn.

> 1. "R.R. briefly explaining the arrangement to sell firearms for Gunsmoke, describing it as '... like a consignment.'"

The Court can evaluate only that portion of a statement that the Government tendered verbatim[2] – that is, that R.R. apparently told a customer that the arrangement with Gunsmoke and Mr. Wyatt was "like a consignment." In that context, this Court has some doubt that this statement is appropriate for consideration under Rule 801(d)(2)(e), insofar as it is not clear that it is being offered for its truth. In other words, the Court does not understand the Government to contend that, in reality, the arrangement that Mr. Wyatt devised with Gunner's Den was "like a consignment"; if anything, the Government contends that it was not a "consignment" between Gunsmoke and Gunner's Den, but rather a disguised sale by Gunsmoke. Because it does not appear that the Government is proffering the "like a consignment" statement for its truth, this statement is not hearsay and thus, not subject to admission under Rule 801(d)(2)(e).

> 2. "When UC1 asked if he should go to Gunsmoke and then compare prices for firearms Gunsmoke sold vs. the Gunner's Den, R.R. said 'Rich would come over here and want to burn me at the stake. Just come in here and tell me what you want.'"

Again, the Court can only evaluate that portion of the statement that quotes R.R. verbatim – that is, his statement that "Rich would come over here and want to burn me at the stake. Just

---

[2] Because provisional admission of hearsay is within a district court's discretion, some courts have held that verbatim recitation of the statements at issue is not strictly necessary. *See, e.g., United States v. Schulte*, No. 10-cr-00455-WYD, 2011 WL 4048785, *9 (D. Colo. Sept. 9, 2011). This Court disagrees. When a statement is summarized by the Government, the Court is not necessarily evaluating the admissibility of the statement; rather, it is evaluating the admissibility of the summary of the statement. The summary, however, will not be admitted at trial; the statement will. Thus, asking the Court to make a provision determination of admissibility based on a summary introduces yet another layer of abstraction and uncertainty – that is, the accuracy (or lack thereof) of the summary -- to a *James* process that already is so provisional as to be borderline advisory. There is no significant burden to requiring the Government to identify the verbatim statement it wishes to admit, as the Government already has the statement in question recorded or memorialized in the form that it will present at trial, and thus, precise transcription of the statement at the *James* stage is a trivial burden. Accordingly, this Court exercises its discretion by declining to evaluate summarized statements and will limit its analysis to verbatim recitations of the statements the Government intends to introduce.

come in here and tell me what you want." Neither of these sentences are hearsay. The first sentence, "Rich" – presumably, Mr. Wyatt – "would . . . burn me at the stake" is not an assertion of fact offered for its truth. Certainly, R.R. is not suggesting that, as a matter of fact, Mr. Wyatt actually intended to set him on fire. The statement is one of clear hyperbole, its intended meaning conveying that Mr. Wyatt would be mad at R.R. if he suggested the customer compare prices. Because the statement is not offered for its truth, it is not hearsay, and thus, not subject to admission under Rule 801(d)(2)(e).

The second statement – "Just come in here..." – is also not hearsay, insofar as it is not an assertion of a fact. It is a command. Thus, it, too, is not subject to admission under Rule 801(d)(2)(e). *U.S. v. Bellomo*, 176 F.3d 580, 586 (2d Cir.1999).

> 3. "T.M. in the presence of R.R., further described the arrangement between the Gunner's Den and Gunsmoke, saying 'Basically, their FFL is on hold.' When UC1 asked if [it] was OK to purchase firearms from Gunsmoke, T.M. said 'Yeah, no, basically they can't do the transfer right now because they don't have their Federal Firearms License. I think there's a tax issue so they put their license on hold. The owner of that store and R.R. went to gunsmithing school together like thirty years ago so they've known each other forever so we're helping them out.'"

The operative portions of this statement that are recited verbatim are T.M. stating that Gunsmoke's "FFL is on hold," that "they can't do the transfer right now because they don't have their [FFL]," and that "we're helping them out." Each statement is an assertion of fact that, presumably, the Government is offering for its truth. Thus, the statements are hearsay by the declarant, T.M. The Government's proffer contends that the statement was made on February 18, 2015, a date that falls within the temporal scope of the conspiracy as described by the Government. These statements are in furtherance of the conspiracy described above, insofar as they reflect T.M. explaining to UC1 the purpose and operation of the conspiracy to UC1 – that

5

UC1 deals with Gunner's Den because Gunsmoke does not have an active FFL – in order to induce UC1 to make a purchase from Gunsmoke.

Mr. Wyatt's sole objection to this statement, as reflected on the proffer chart, is that it is insufficient to determine the existence of the conspiracy under *Bourjaily*. This objection is misplaced: the statement itself need not be used to "determine the existence of the conspiracy"; it need only be a statement that fits, temporally and substantively, within the operation of the conspiracy the Government has described.  Because the Court finds that it meets both requirements, it is provisionally admissible.

> 4.  "R.R. explained that if UC1 purchased a firearm from the Gunner's Den, then the background check fee would be less expensive than the fee charged if UC1 purchased a firearm from Gunsmoke and did the background check at the Gunner's Den."

This statement is problematic for several reasons. First, it is a description of R.R.'s statement, not a recitation of the statement itself. As such, any provisional ruling the Court made as to the statement's admissibility would be influenced by the accuracy of the Government's summary, a factor that interjects unnecessary uncertainty into the *James* evaluation. Second, it is not clear that it was made in furtherance of the conspiracy. As described by the Government, the conspiracy was intended to allow customers to purchase firearms from Gunsmoke and receive them from Gunner's Den. The statement recited here appears to reflect R.R. attempting to undermine that conspiracy, suggesting to UC1 that purchasing a firearm through Gunsmoke – that is, through the conspiracy – is more expensive than purchasing the firearm directly from Gunner's Den. This statement appears to be made by R.R. to secure a sale by Gunner's Den solely for R.R.'s benefit, not a sale through the mechanism of the conspiracy. Without additional context explaining why this statement somehow promoted the objectives of the conspiracy,

rather than undermining it, the Court finds that it is not provisionally admissible under Rule 801(d)(2)(e).

> 5. "T.M. again further explains the arrangement between the Gunner's Den and Gunsmoke by statement it's not like a consignment, because the Gunner's Den does not make any profit from the sale of the firearm if it's purchased at Gunsmoke, and the Gunner's Den only profits from the background check."

This statement is not presented verbatim, and thus, the Court is reluctant to analyze its provisional admissibility based simply on the Government's summarization. Even assuming the Court attempted such analysis, it is unclear that the statement is indeed made in furtherance of the conspiracy. At best, the apparent purpose of the statement is to assure someone – perhaps a prospective customer – that Gunner's Den does not make any profit from the sale of the gun itself if the purchase is made through Gunsmoke. Conceivably, it could be that the statement is intended to induce the unidentified purchaser to conduct the transaction through Gunsmoke – that is, through the conspiracy – because doing so does not add an extra expense to the transaction in the form of Gunner's Den taking a profit on the sale. But such a conclusion would be entirely speculative from the record presently before the Court, and because the Government bears the burden of demonstrating the statement's connection to the conspiracy by a preponderance of the evidence, the Court finds that the Government has failed to carry that burden with regard to this statement. Accordingly, this statement is not provisionally admissible under Rule 801(d)(2)(e).

> 6. "T.M., in reference to the firearm already being in inventory, says "This is not cool. It's easier if I could just write it in. Now I have to go in the back and search for it."

The verbatim statement here consists of three sentences. The first, "this is not cool," does not appear to be an assertion of fact; rather, it appears to be a figurative statement expressing

T.M.'s frustration with the situation. As such, this sentence is not hearsay, nor admissible via Rule 801(d)(2)(e).

The second sentence, "it is easier if I could just write it in," is arguably an assertion of fact – "it is easier" – but it is unclear how this sentence furthers the conspiracy. As described by the Government's proffer, the conspiracy operated in the form of Gunsmoke taking a customer's order, contacting a dealer, and having that dealer ship a weapon to the customer via Gunner's Den. The proffer's reference to a firearm "already being in inventory" – presumably, in Gunner's Den's inventory – thus describes a situation that appears to fall outside the scope of the conspiracy as described by the Government. That is to say that nothing in the Government's proffer describes the conspiracy allowing Gunsmoke to sell firearms that are already present in Gunner's Den's inventory. Thus, the Court cannot say that this statement is one that was made in furtherance of the conspiracy, and thus, it is not admissible under Rule 801(d)(2)(e).

The third sentence, that T.M. "has to search for" the weapon in inventory, suffers from the same problems as the second sentence. Thus, it too is not preliminarily admissible.

> 7. "In response to why UC2 bought the gun at Gunsmoke, but was doing the background check at the Gunner's Den, T.M. explained the IRS was investigating Wyatt, 'so they pulled his FFL.' T.M. also explained that Wyatt and the owner of the Gunner's Den had been friends for many years."

The only verbatim passage quoted here is T.M. stating that "they" – whoever that may be – "pulled [Mr. Wyatt's] FFL" because he was being investigated by the IRS. This appears to be a statement of fact, but it is not clear that the Government is offering it for its truth: that Mr. Wyatt's FFL was indeed pulled because an IRS investigation. (The Court has some doubt that the reason <u>why</u> Mr. Wyatt's FFL was suspended is relevant to the charges against him in this case, but questions of relevance are beyond the scope of a *James* determination.) Arguably, the

8

statement's relevance is more narrow, insofar as it demonstrates T.M.'s knowledge that the reason for the conspiracy's operation: because Mr. Wyatt's FFL was "pulled," he could not sell firearms directly through Gunsmoke. In this sense, then, the statement reflects T.M. describing the reason why the conspiracy is operating in that manner to a customer. The statement was made on March 18, 2015, a date within the Government's proffered duration of the conspiracy. Accordingly, the Court finds that this portion of the statement, reflecting T.M.'s knowledge that Mr. Wyatt's FFL was "pulled," is preliminarily admissible under Rule 801(d)(2)(e). The Court does not opine as to any other portion of this statement, as it is not recited verbatim.

> 8. While T.M. completed the AFT Form 4473 to transfer the firearm to UC2, T.M. explained the gun being picked up by UC2 was 'the last one of the hundred that I transferred.'"

The Court finds that the verbatim portion of the statement – this gun is "the last one of" a group – is not in apparent furtherance of the conspiracy. The meaning of T.M.'s statement is unclear from the context, as the Government offers no explanation of what "the hundred that I transferred" refers to. It may be that the Government is suggesting that T.M. is admitting to having sold a hundred guns through the Gunsmoke – Gunner's Den operation, but that would be sheer speculation on the part of the Court. Moreover, it is not clear that the statement by T.M. is being offered for its truth – that the weapon bought by UC2 was indeed "the last" of the group. Even if it was, it is not clear how such a statement furthered the operation of the conspiracy, as it does not appear to be one designed to induce UC2 to continue with the transaction; rather, it simply appears to be an inconsequential bit of small talk by T.M. Accordingly, the Court finds that this statement is not provisionally admissible under Rule 801(d)(2)(e).

> 9. "T.M. tells R.R. (regarding UC2 getting a Wyatt Deep Cover), 'she got the last one.'"

Much like Statement #8, it is not clear to the Court what the statement "she got the last one" means in this context (much less what a "Wyatt Deep Cover" is), that the statement is being offered for its truth, or that it furthered the conspiracy in any way. Accordingly, the Court finds that this statement is not provisionally admissible under Rule 801(d)(2)(e).

## **CONCLUSION**

For the foregoing reasons, the Court finds that Statement 3 and the limited portion of Statement 7 are provisionally admissible under Rule 801(d)(2)(E). The Government has not made a sufficient showing as to the admissibility of the remaining statements.

DATED this 2d day of February, 2017.

BY THE COURT:

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Court